[No. F013242. Fifth Dist. Dec. 20, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD DEAN MOCKEL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts IIA and IIB.

## COUNSEL

Clare M. Conk, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Wanda Hill Rouzan and Jane Olmos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Appellant Richard Mockel entered pleas of no contest in West Kern County Municipal Court to violating Penal Code[1] section 191.5, subdivision (a) (gross vehicular manslaughter while intoxicated, count one); violating Vehicle Code section 20002, subdivision (a) (failure to stop when involved in an accident causing property damage, count two); violating Vehicle Code section 14603 (violating a license restriction, count three); and violating Vehicle Code section 23152, subdivision (a) (driving under the influence with a prior conviction, count four).

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Mockel was sentenced in Kern County Superior Court to 10 years in state prison on count one and to 6 months in Kern County jail on count two, the sentences to run consecutively. The judgment on count three was suspended, presumably as a result of the double punishment prohibition of section 654. Mockel was sentenced on count four to 90 days in Kern County jail plus a fine of $390 converted to 13 days' additional jail time, all to run concurrently with the sentence in count one.

On appeal Mockel contends the sentencing court committed several errors. In the unpublished portion of this opinion we will agree with Mockel that the maximum term agreed upon as part of a plea bargain was 10 years, and we will specifically enforce the bargain by modifying the judgment accordingly. We will also agree that the sentence on count four should be stayed under section 654, but we will reject a similar contention with respect to count two. In the published portion of the opinion we hold that the sentencing court did not err in receiving and considering letters from friends and acquaintances of the victim urging imposition of the maximum sentence.

## I.

### FACTS

The following facts were obtained from the probation officer's report:

On September 8, 1989, in Bakersfield, Mockel rear-ended a car driven by David Cohn who was stopped at a traffic light on Rosedale Highway at Fruitvale Avenue. Cohn suggested the police be called and Mockel responded, "Are you sure you want to do that?" When Cohn insisted, Mockel agreed to move his 1982 Ford truck to the side of the roadway in front of Cohn's vehicle and out of traffic. Mockel pulled in front of Cohn and traveled slowly up Fruitvale for approximately 100 yards. Cohn followed. Mockel stopped. Cohn turned off his ignition and exited his car, walking towards Mockel's truck. As he did so, Mockel sped away heading north on Fruitvale. Cohn jumped back into his car and followed, attempting to obtain Mockel's license number. Mockel was traveling at high speeds estimated in excess of 80 miles per hour. During the chase, Cohn observed Mockel throw beer cans out of his truck.

The two vehicles approached Olive Drive. Mockel entered the intersection and tried to execute a sharp right turn but lost control of his vehicle. The vehicle crossed over the center divider and "launched" into a 1986 Isuzu Trooper driven by Bruce White. White died from injuries sustained in the accident.

Mockel's blood-alcohol level two hours after the crash was .18 percent. Mockel was not wearing corrective glasses or contact lenses when driving although his license required him to do so.

At the time of the accident Mockel was on probation imposed as a result of a DUI conviction in February 1987. He also had suffered two other related convictions: a DUI conviction in February 1983 and a hit-and-run conviction in January 1986.

## II.

### DISCUSSION

### A., B.*

. . . . . . . . . . . . . . . . . . . . . .

## C. THE COURT PROPERLY ALLOWED SUBMISSION OF THE LETTERS

■ Mockel complains that the trial court improperly allowed submission of letters from numerous family members and friends of the victim expressing their views on the appropriate sentence to be imposed. He claims the letters denied him a fair hearing and violated the statutes governing matters to be considered at a sentencing hearing. We disagree.

Mockel's first assignment of error is that sections 1191.1 and 1191.15[3] are "clearly exclusive and limit" participation on behalf of a deceased victim to one person. The statutes cannot be read so narrowly.

---

* See footnote, *ante*, page 581.

[3] Section 1191.1 states in pertinent part:

"The victim of any crime, or his or her parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died, has the right to attend all sentencing proceedings under this chapter and shall be given adequate notice by the probation officer of all sentencing proceedings concerning the person who committed the crime.

"The victim, or his or her parent or guardian if the victim is a minor, or next of kin has the right to appear, personally or by counsel, at the sentencing proceeding and to reasonably express his or her views concerning the crime, the person responsible, and the need for restitution. The court in imposing sentence shall consider the statements of victims, parents, or guardians, and next of kin made pursuant to this section and shall state on the record its conclusion concerning whether the person would pose a threat to public safety if granted probation . . . ."

Section 1191.15 states in pertinent part:

"(a) The court may permit the victim of any crime, or his or her parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died, to file with the court a written, audiotaped, or videotaped statement expressing his or her views concerning the

Section 1191.1 was enacted by initiative in 1982 as part of "The Victims' Bill of Rights." Section 1191.15 was added by the Legislature in 1988. These sections are not restrictive and should not be read to exclude all other sources of information for consideration in sentencing. Before the passage of Proposition 8, the sentencing court had discretion to allow statements by the victim and/or family and friends and to consider them, where relevant, in determining the appropriate sentence to be imposed. (*People* v. *Arbuckle* (1978) 22 Cal.3d 749, 754 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]; see also Cal. Rules of Court, rule 419(a)(7).) However, the court was not required to allow a victim to participate in the proceeding nor was there any requirement that a victim receive notice of sentencing. (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 331 [197 Cal.Rptr. 509].)

Section 1191.1 codified the Victims' Bill of Rights and requires that the victim or a family representative be notified of all sentencing proceedings and be given an opportunity to appear and express views concerning the crime. The statute mandates that the court consider the victim's statement. (150 Cal.App.3d at pp. 331-332.) The statute restricts the number of individuals a court *must* hear; it does not restrict the number of individuals a court *may* hear. (*Ibid*.) The obvious rationale for limiting the scope of the right to be heard is to protect against overburdening the court. The court remains free, however, to exercise its discretion to hear and consider additional witnesses where appropriate. (*Ibid*.)

The language of section 1191.15 similarly limits the *right* of individuals to be heard and considered in sentencing. The section provides the opportunity for a victim, or the victim's representative, to address the court by means other than personal appearance. Other than describing the method by which victims' rights may be exercised, the limiting language of section 1191.15 is identical to that of section 1191.1. We see no reason to interpret the language in the two sections differently. ■ It is well established that a specific provision should be construed with reference to the entire statute. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].)

Mockel's second point of argument is that allowing what he classifies as the fruits of "an effort . . . to incite community outrage over this tragic event" denied him due process of law and his right to a fundamentally fair hearing.

■ It is well settled that allowing statements from the friends and family of the victim of a violent crime does not violate due process or the

crime, the person responsible, and the need for restitution, in lieu of or in addition to such person personally appearing at the time of judgment and sentence. The court shall consider any such statement filed with the court prior to imposing judgment and sentence . . . ."

defendant's right to confront and cross-examine witnesses so long as the defendant had notice that the statements would be accepted and had an opportunity to respond. (*People* v. *Birmingham* (1990) 217 Cal.App.3d 180, 183-185 [265 Cal.Rptr. 780]; *People* v. *Sewell* (1989) 210 Cal.App.3d 1447, 1449 [259 Cal.Rptr. 34] and cases cited therein.) ■ Mockel was given an opportunity to read and respond to all of the letters submitted. Mockel's counsel requested a continuance of the sentencing hearing so he could review the letters received. The request was granted. Mockel has not shown any denial of due process.

The United States Supreme Court, while finding the submission of victim statements to a *jury* in a *capital* case violated the Eighth Amendment, acknowledged facts about the victim and his or her family may be relevant and admissible in noncapital cases. (*Booth* v. *Maryland* (1987) 482 U.S. 496, 507-509 [96 L.Ed.2d 440, 451-452, 107 S.Ct. 2529].) ■ Well-established decisional law in California allows the sentencing court to consider responsible out-of-court or unsworn statements concerning the circumstances of the crime and/or the characteristics of the defendant relevant to sentencing. (*People* v. *Arbuckle, supra,* 22 Cal.3d at p. 754; *People* v. *Zikorus, supra,* 150 Cal.App.3d at p. 333.) Here the court considered both the letters received from family and friends of the victim and letters received on behalf of Mockel. There was nothing fundamentally unfair about the sentencing hearing. (*People* v. *Birmingham, supra,* 217 Cal.App.3d at pp. 184-185.)

■ Next, Mockel argues the letters were not relevant and were submitted solely to invoke the emotion of the court. Some of the information contained in the various letters is irrelevant and much of it is cumulative of the information already found in the probation report. However, as the court in *People* v. *Sewell, supra,* noted, judges spend much of their professional lives separating the wheat from the chaff and have extensive experience in sentencing, along with the legal training necessary to determine an appropriate sentence. (210 Cal.App.3d at p. 1449.) It is unlikely a judge would respond to the type of expression found in the letters here challenged. Moreover, the statement most likely to invoke an emotional response was the one statement the court had a duty to hear and consider—the griefstricken statement of the victim's wife, Beverly White.

Additionally, Mockel was required to raise an objection to the statements at the hearing when the sentencing court could respond accordingly. Because no objection was made, Mockel has waived his right to complain and may not raise the issue for the first time on appeal. (*People* v. *Birmingham, supra,* 217 Cal.App.3d at p. 183, citing *People* v. *Evans* (1983) 141 Cal.App.3d 1019, 1021 [190 Cal.Rptr. 633]; see also *People* v. *Zikorus,*

*supra*, 150 Cal.App.3d at p. 333 [Defendant objected on relevancy grounds to a portion of victim statement. Objection was sustained.].)

Lastly, Mockel contends the receipt and consideration of the letters not expressly authorized by sections 1191.1 and 1191.15 violate section 1204's[4] prohibition against accepting any verbal or written statement in aggravation or mitigation of punishment except as provided in the statute. Although at first blush Mockel's argument appears to have merit, a closer review of the governing statutes establishes otherwise.

The language of section 1204 applies only to evidence of mitigating and aggravating factors, not generic victim statements. If we were to read section 1204 as applicable to statements from family, friends, and witnesses concerning the victim and the tragic circumstances of the crime, the section would directly prohibit well-established practices recognized as being within the discretion of the sentencing court and would undermine the intent of the Victims' Bill of Rights. ■ The Victims' Bill of Rights was obviously intended to ensure that victims of crime and/or their families and friends may participate in sentencing proceedings even if for no other reason than to vent their anger and pain.

We find no cases on point. However, in *People* v. *Zikorus, supra,* 150 Cal.App.3d at pages 333-334, the court noted that although existing law allowed consideration of a victim statement without cross-examination and confrontation, there were important exceptions to the rule. The court noted in footnote 3 that ex parte communications by the prosecutor are prohibited and *evidence offered in aggravation or mitigation of a state prison term* must comply with section 1204. Thus at least one other court recognizes the distinction we suggest between victim statements and the evidence described in section 1204.

■ Another reason supporting the court's receipt and consideration of the letters here is that they were attached to the probation report and thus fell within the expressed exception to section 1204. They were submitted

---

[4] Section 1204 provides as follows:

"The circumstances shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section. This section shall not be construed to prohibit the filing of a written report by a defendant or defendant's counsel on behalf of a defendant if such a report presents a study of his background and personality and suggests a rehabilitation program. If such a report is submitted, the prosecution or probation officer shall be permitted to reply to or to evaluate the program."

pursuant to a statutorily established procedure with proper procedural safeguards.

Mockel argues that section 1203 does not authorize the inclusion of victim statements in a probation report and thus the exception in section 1204 does not apply. We are not persuaded. ■ Section 1203 mandates inclusion of certain information in the report but does not purport to identify all information which may be included. We do not read the statute as a definitive listing of all contents of a probation report. Many items routinely included in probation officer reports are not identified in the statute but are identified in the applicable Rules of Court. (Cal. Rules of Court, rule 419.)

### DISPOSITION

The judgment is modified to reflect that the sentence imposed on count two shall run concurrent with the sentence on count one and that execution of the sentence imposed on count four is stayed pending completion of the sentence on count one and permanently thereafter. The court below shall issue an amended abstract of judgment reflecting the modifications ordered herein. As so modified the judgment is affirmed.

Martin, Acting P. J., and Vartabedian, J., concurred.